1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,        )    Civil No. 05cv0921-L(CAB)
                                     )
12               Plaintiff,          )    **AMENDED ORDER RE:  MOTIONS**
                                     )
13  v.                               )    **ORDER ENTERING PERMANENT**
                                     )    **INJUNCTION**
14                                   )
    CHRISTOPHER M. HANSEN,           )
15                                   )    [Docket Nos. 64, 67, 77, 81, 85]
                 Defendant.          )
16                                   )
                                     )
17  _____ )

18        This matter comes before the Court on:  Plaintiff's Motion for Summary Judgment;

19  Plaintiff's Motion for Default Judgment; Defendant's Petition to Chief Justice for Leave of

20  Court to File Cross Complaint; Defendant's Petition to Dismiss; and Defendant's Petition to

21  Stay.  The Court finds the motions suitable for disposition on the papers and without oral

22  argument in accordance with Civil Local Rule 7.1(d)(1).

23                            **BACKGROUND**

24        Defendant Christopher M. Hansen conducts business and promotes a number of tax-fraud

25  schemes under two names or entities: the Family Guardian and the Sovereignty Education and

26  Defense Ministry ("SEDM").[1]  He sells how-to guides filed with forms, instructions, and tactics

27

28
_____
      [1]  Gordon Decl. ¶ 6.

to help customers evade paying federal taxes.[2]  The prices for these guides range from $10 to $40, and he also offers for free other documents and advice for the same purpose, including a lengthy document entitled "The Great IRS Hoax."[3]  Hansen markets his programs through word-of-mouth, live seminars, and his websites www.famguardian.org and www.sedm.org.[4]

Hansen also sells "IRS Response Letters" that are meant to be used by persons who have been contacted by the Internal Revenue Service ("IRS").[5]  These response letters delay, obstruct, impede or at least slow down the IRS examinations.[6]  They are not responsive to IRS inquiries and do not advance the cause of the examination.[7]  These letters falsely notify the IRS that the customers are not taxpayers and are not required to file tax returns, and that federal income tax laws are not enforceable.[8]  The form letters also contain threats of criminal prosecution against IRS employees and are used to intimidate the employees and obstruct IRS investigations.[9]  Hansen charges around $50 for each letter and tells customers these form letters will cause the IRS to cease the examinations of their liabilities.[10]  In addition to these letters, Hansen provides customers with a nearly 100-page questionnaire entitled "Test for Federal Tax Professionals" for his customers to give to IRS agents who are investigating the customers' tax returns.[11]  Hansen advises his clients not to cooperate with the investigating IRS agent until the agent completes the

---

[2]  *Id*.; Cantrell Decl. ¶ 3, Ex. 2(b).

[3]  Gordon Decl. ¶ 6; Cantrell Decl. ¶ 4, Ex. 2(d).

[4]  Gordon Decl.  ¶¶ 7, 12.

[5]  *Id*. ¶ 13; Cantrell Decl. ¶ 5, Exs. 2(f)-(l).

[6]  Gordon Decl. ¶ 14.

[7]  *Id*.

[8]  Cantrell Decl. ¶ 5, Exs. 2(f)-(l).

[9]  Cantrell Decl. ¶ 5, Exs. 2(f)-(l).

[10]  Cantrell Decl. ¶ 5, Ex. 2(m) at 584-85.

[11]  Gordon Decl. ¶ 15; Cantrell Decl. ¶¶ 3, 5, Ex. 2(b) at 340-404, Ex. 2(c) at 406-07.

questionnaire.[12]

In connection with promoting his tax-avoidance schemes, Hansen has made numerous false or fraudulent statements regarding the government's ability to tax, including stating that: the Internal Revenue Code ("IRC") applies only within a "federal zone;"[13] federal income taxes only apply to federal officers, federal employees, and elected federal officials;[14] payment of income taxes is voluntary;[15] income does not include wages, salaries, commissions, or tips;[16] wages cannot be taxed;[17] and W-4 forms do not apply to federal income taxes and only federal employees or federal officeholders need to complete Form W-4.[18]

Hansen also aids or assists in preparing false or fraudulent income tax returns for customers, or tells them not to file a return at all.[19] For a $100 hourly fee, Defendant will meet with customers for administrative or consulting services and prepare their documents for them.[20] Hansen advises customers that once the Government stops receiving 1040's and W-2's, "it will be more difficult for them to find you as well because you won't be feeding them any more information about you!."[21] He also informs customers that by not filing income tax returns, they will create several problems for the IRS; in particular: they will add considerably to the effort and the expense involved with collecting taxes from the customer; it is harder for the IRS to track the customer down because the Government does not have a recent address or phone

[12] Gordon Decl. ¶ 15; Cantrell Decl. ¶ 5, Ex. 2(c) at 407.

[13] Cantrell Decl.¶¶ 3, 5, Ex. 2(b) at 286, Ex. 2(e) at 466.

[14] *Id*. ¶ 5, Ex. 2(e) at 466, Ex. 2(g) at 520-23, Ex. 2(h) at 527-30.

[15] *Id*. ¶ 5, Ex. 2(e) at 494.

[16] *Id*. ¶5, Ex. 2(e) at 504.

[17] *Id*. ¶ 5, Ex. 2(e) at 507.

[18] *Id*. ¶ 5, Ex. 2(i) at 534-38.

[19] *Id*. ¶ 5, Ex. 2(c); Gordon Decl. ¶ 23; Henline Decl. ¶¶ 5-6.

[20] Gordon Decl. ¶ 29, Ex. 1(b) at 8; Cantrell Decl. ¶ 5, Ex. 2(m) at 583.

[21] Cantrell Decl.¶ 5, Ex. 2(c) at 418.

number; the Government has no evidence it can use against the customer in a tax prosecution; and the customer has severely limited the Government's ability to prosecute the customer for tax fraud.[22]  If a customer files an income tax return, Hansen advises and assists the customer to file returns that falsely show only one cent of income and request a refund for payments made (or taxes previously withheld).[23]

Defendant's website includes sample returns and instructions, and provides customers with materials to attach to the returns that set forth his arguments in support of the erroneous filing.[24]  As part of this program, Hansen advises and assists his customers to file false IRS W-4 Forms (Employee's Withholding Allowance Certificate) and W-8 Forms (Certificate of Foreign Status) so that the employer will wrongfully stop withholding taxes from the customers' paychecks.[25]  Hansen also advises customers to attach erroneous IRS 4582 Forms ("Substitute for Form W-2") to their tax returns.[26]  Hansen provides his customers with fraudulent "opinion letters" that purportedly document the customer's good faith belief in the lack of his or her liability to pay income taxes.[27]

In addition to his other programs, Hansen markets a "Citizenship Administrative Repudiation" program in which his customers purportedly give up their "U.S. citizenship," but retain or claim "American National citizenship."[28]  Hansen states that as a result of the Administrative Repudiation, the customer will no longer be liable for federal income tax.[29]  He

---

[22]  *Id.* ¶ 2, Ex. 2(a) at 48-49.

[23]  Gordon Decl. ¶ 24; Cantrell Decl. ¶ 2, Ex. 2(a) at 17.

[24]  Cantrell Decl. ¶¶ 2, 3, 5, Ex. 2(a) at 15-27, Ex. 2(b), Ex. 2(c) at 413; Gordon Decl. ¶ 23; Henline Decl. ¶¶ 5-6.

[25]  Gordon Decl. ¶ 18; Cantrell Decl. ¶ 3, Ex. 2(b)

[26]  Gordon Decl. ¶ 18; Cantrell Decl. ¶ 3, Ex. 2(b).

[27]  Cantrell Decl. ¶ 2, Ex. 2(a) at 136-91.

[28]  Cantrell Decl. ¶¶ 2, 5, Ex. 2(a) at 28-47, Ex. 2(c) at 406; Ex. 2(m) at 583; Gordon Decl. ¶ 29, Ex. 1(b) at 8, 10-11.

[29]  Gordon Decl. ¶ 29, Ex. 1(b) at 10.

charges $2,000 to individuals and $2,700 for a couple for the Administrative Repudiation process.[30]

Hansen invites customers to review his programs so they can start their own war with the IRS.[31]  Defendant's customers are located throughout the United States, and their participation has resulted in their illegally failing to file appropriate federal income tax returns, failing to have the proper amount of federal income taxes withheld from wages, and failing to pay their federal tax liabilities.[32]

Hansen is aware that courts have rejected his positions relating to the federal tax laws and blames those decisions on a conspiracy by the judiciary to protect the federal income tax.[33]  The IRS has notified Defendant that his program is under investigation, and that his conduct is subject to penalty under IRC §§ 6700 and 6701 and subject to injunction under IRC §§ 7402 and 7408.[34]  Notwithstanding this notice, Hansen continues to market his programs and interfere with the administration and enforcement of the federal tax laws.[35]

On May 2, 2005, the United States filed this action against Defendant seeking to enjoin Hansen from:  promoting programs that advise or encourage customers to violate the tax laws and evade assessment or collection of their federal tax liabilities; making false or fraudulent statements about the securing of any tax benefit by reason of participating in any plan or arrangement; engaging in conduct subject to penalty under 26 U.S.C. §§ 6700 and 6701; engaging in conduct that interferes with the administration and enforcement of the internal revenue laws; and engaging in any activity subject to penalty under the IRC.

On June 9, 2005, Hansen filed an Answer and a Motion to Dismiss for Failure to State a

---

[30]  Gordon Decl. ¶ 29, Ex. 1(b) at 11.

[31]  Gordon Decl. ¶ 28, Ex. 1(a) at 7.

[32]  Henline Decl. ¶ 7; Gordon Decl. ¶ 21, 25-26.

[33]  Cantrell Decl. ¶ 4, Ex. 2(d) at 427, 429.

[34]  Answer at 29.

[35]  Gordon Decl. ¶ 27.

Claim Upon Which Relief Can Be Granted and Other Matters.  The Court denied Hansen's motion to dismiss in an order dated July 26, 2005.  Plaintiff subsequently filed a motion to strike Defendant's jury demand.  This Court granted the motion in an order dated October 4, 2005.  Hansen then filed a second motion to dismiss and a request for judicial notice, which this Court denied in an order dated February 9, 2006.

Before the Court are the following motions:  Plaintiff's motion for summary judgment; Plaintiff's motion for default judgment based on Defendant's refusal to comply with Court orders requiring him to respond to questions at his deposition; Defendant's motion for leave to file a cross-complaint; Defendant's motion to dismiss; and Defendant's motion to stay.

## DEFENDANT'S MOTIONS

### I.   Defendant's Petition to Chief Justice for Leave of Court to File Cross Complaint

Defendant attempted to file a cross complaint in this action.  This Court rejected the document in a discrepancy order dated April 5, 2006 because the scheduling order in this action required motions for leave to file additional pleadings to be filed by September 30, 2005.  (Dock. No. 75.)  Defendant has filed a document entitled, "Petition to Chief Justice for Leave of Court to file Cross Complaint."  The Court construes the document as a motion for leave to file a cross complaint.[36]  In this motion, Defendant argues the Court erred in rejecting his cross complaint, the rejection was arbitrary and unreasonable, and contends that the cross complaint implicates the undersigned and therefore should be decided by the Chief Justice.  Defendant further argues the Magistrate Judge has no authority to set deadlines in this action.

As an initial matter, the Court finds it can properly rule on this motion.  *See United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986) ("A judge is not disqualified by a litigant's suit or threatened suit against him.").  Second, as this Court has stated, the Magistrate Judge has the authority to issue scheduling orders.  28 U.S.C. § 636(b)(1)(A).

Because the deadline for filing motions for leave to file additional pleadings has passed,

---

[36] Defendant also filed an *ex parte* application requesting the Court defer consideration of this motion until after this Court rules on Defendant's motion for leave to file a cross complaint. That *ex parte* application is **DENIED AS MOOT**.

Defendant must establish "good cause" under Federal Rule of Civil Procedure 16(b).  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).  Rule 16(b)'s "good cause" inquiry "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609; *Coleman*, 232 F.3d at 1294.  Defendant has not presented any reasons why he could not have timely sought leave to file a cross complaint.  Accordingly, his motion is **DENIED**. Should Defendant persist in pursuing the cross complaint's claims in a new action, he is advised that although the complaints and documents submitted by *pro se* litigants are read liberally, *pro se* litigants are bound by Federal Rule of Civil Procedure 11, which "provides for the imposition of sanctions when a [document filed with the court] is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Warren v. Guelker*, 29 F.3d 1386, 1388, 1390 (9th Cir. 1994).

## II. Defendant's "Petition to Dismiss"

Defendant has filed a Petition to Dismiss,[37] which this Court construes as a motion to dismiss.  The hearing date on the motion is June 26, 2006.  Defendant argues this case must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The gravamen of his motion requests the Court to order Plaintiff to provide information showing the law that "expressly" extends enforcement of federal tax laws to the 50 states in the Union.

Having reviewed the motion, the Court finds no additional briefing is necessary.  First, the motion was filed beyond the motion cutoff date set in the scheduling order and Defendant has not shown good cause under Rule 16(b) why he could not have filed this motion earlier. Second, Defendant's motion does not present a viable basis for dismissing this case for lack of subject matter jurisdiction.  As discussed below, courts have repeatedly found the IRC is not limited to federal enclaves.  *In re Becraft*, 885 F.2d 547, 548 n.2 (9th Cir. 1989); *United States v. Sloan*, 939 F.2d 499, 501 (7th Cir. 1991).  Accordingly, Defendant's motion to dismiss is **DENIED**.

---

[37] Defendant also filed a Petition to Stay this action pending ruling on his motion to dismiss.  Defendant's motion to stay is **DENIED AS MOOT**.

**PLAINTIFF'S SUMMARY JUDGMENT MOTION**

**I.      Applicable Law Regarding Summary Judgment Motions**

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when, under the substantive governing law, it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the burden of proof at trial, it may carry its initial burden by "produc[ing] evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). When the moving party bears the burden of proof on an issue — whether on a claim for relief or an affirmative defense — the party "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in its favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *see S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party fails to discharge its initial burden of production, summary judgment must be denied and the court need not consider the nonmoving party's evidence, even if the nonmoving party bears the burden of persuasion at trial. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970); *Nissan Fire*, 210 F.3d at 1102-03. When the moving party carries its initial burden of production, the nonmoving party cannot "rest upon mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 256. Rather, the non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on

8

file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *Anderson*, 477 U.S. at 256; *Nissan Fire*, 210 F.3d at 1103.

## II.   Discussion

### A.   Defendant's Jurisdictional Defenses

The Court notes that in opposition to the motion for summary judgment, Defendant raises challenges to this Court's subject matter jurisdiction over this action and personal jurisdiction over the Defendant.  He also contends he is not a proper party to this suit and argues that exhaustion of remedies is required prior to maintenance of this suit.  Defendant raised these arguments in his motions to dismiss the Complaint, and this Court rejected them as a matter of law.  Defendant's opposition brief is no more persuasive, and therefore the Court finds those arguments do not bar summary judgment in Plaintiff's favor.

### B.   Defendant's Evidence

In opposition to this summary judgment motion, Defendant attempts to create triable issues of material fact as to whether he in fact engaged in activity prohibited under IRC §§ 6700 and 6701.  In so doing, he submitted an "Affidavit of Material Facts" in which he discusses his role in SEDM, Family Guardian, his websites, his PayPal account activities, the nature of his speech, and his IRS response letters.  This evidence is not properly before the Court because Defendant had refused to provide it when asked about it in deposition.

Defendant initially refused to attend his deposition unless Plaintiff agreed to a number of conditions, including signing a six-page "Deposition Agreement," which provided that Plaintiff's counsel and Defendant would alternate questions, the deposition would not take place on federal property, any witnesses Defendant brought with him to the Deposition would not be required to identify themselves and would not be required to "suffer the humiliating experience of having their luggage scanned," that Plaintiff would be required to provide evidence "constituting probable cause" to pursue the case at least five days before the deposition, and that Defendant be granted witness immunity prior to the deposition.  (Order Granting Mot. to Compel, filed 10/28/05 ("Mot. to Compel Order"), at 2-3 (citations omitted).)  Plaintiff declined to sign the agreement, and moved to compel Defendant's deposition.  In his opposition,

1  Defendant suggested he intended to assert the Fifth Amendment privilege against self-

2  incrimination.  (*Id.* at 4.)  The Magistrate Judge granted the motion to compel, informed

3  Defendant of the proper way to assert privileges, and instructed him regarding consequences for

4  failure to follow proper deposition procedure.  (*Id.* at 5.)  Defendant was ordered to submit to a

5  deposition without the conditions he sought to impose no later than November 30, 2006, and was

6  further admonished that failure to do so "will be grounds for sanctions, including but not limited

7  to **monetary sanctions, exclusion of evidence, or entry of default judgment**."[38]  (*Id.* at 6-7

8  (emphasis added).)

9          On November 30, 2006, Defendant appeared for his deposition.  He brought with him a

10  document entitled "Prepared Statements for Use During Deposition," which stated that he would

11  not orally respond to any questions, and that "[a]ll answers will be in writing and [that he would]

12  prepare the Deposition Transcript [him]self."  (Mem. in Supp. of United States' Mot. for

13  Sanctions for Discovery Violations, filed 12/8/05, Ex. B.)  In addition, he brought a "Deposition

14  Handout," which restated his refusal to orally answer questions, and imposed various conditions

15  on the deposition.  (*Id.* Ex. C.)  For example, it stated the conditions Plaintiff had to satisfy

16  before Defendant would answer the request to state his name:

17          I need your help in establishing whether any contracts or agency exists between us
           and whether you are willing to remove the unlawful duress I am under at the
18         moment.  . . . [T]he applicable Copyright/Software/User License Agreement (see:
           http://famguardian.org/disclaimer.htm) says that you agree to substitute yourself as
19         the defendant in this proceeding if you quote or use anything written or stated by
           anyone in the ministry or posted on the website in question.  It also says that if you
20         substitute yourself in this way as defendant in this proceeding, that I become your
           fiduciary and agent . . ..  Therefore, I must establish BEFORE answering your
21         question, the nature of any evidence you have used and will use in the future.  If
           you either quoted anything from the website(s) in your Complaint or plan on doing
22         so in the future, than I am appearing today as your fiduciary and not as myself and
           you are the Substitute Defendant.  If you did not quote anything from the Alleged
23         Defendant and are willing to sign an agreement that you won't quote anything in
           the future off the website in question or that he ever said, then I am appearing as
24         myself instead.

25  (*Id.* Ex. C at 9-10 (emphases in original).)  After a call to the Magistrate Judge Defendant agreed

26  to participate orally; however, he "essentially refused to answer any questions asked by

27

28          [38]          Defendant did not object to this order.  *See* Fed. R. Civ. P. 72(a).

Plaintiff" based on relevancy and on a "private contract right" that allegedly prohibited him from answering questions and necessitated asserting the Fifth Amendment privilege.[39]  (Order Granting Pl's Mot. for Sanctions for Discovery Violations, filed 1/24/06 ("Sanctions Order"), at 2, 3.)  His answers generally were along this line:  "I didn't refuse to answer. . . . I gave you an answer.  I said I can't talk about it by contract."[40]  (Dep. of Christopher Hansen, 11/30/05 ("Hansen Dep."), at 61 (attached as Ex. A to Mem. in Supp. of United States' Mot. for Sanctions for Discovery Violations, filed 12/8/05).)

       After the November 30 deposition, Plaintiff moved for sanctions.  Defendant opposed the motion claiming he cooperated because, to the extent he did not answer questions at the deposition, he answered them later in what he refers to as "the Amplified Deposition Transcript," which was over 800 pages in length.  (Mem. of Law in Supp. of Pet. to Amend J. and for More Definite Statement, filed 6/13/06, at 22, 23.)  Defendant contended that "the answers properly asserted constitutional privileges and addressed all concerns of the Plaintiff then known."  (*Id*. at 23.)

       In granting Plaintiff's motion for sanctions, the Magistrate Judge noted Defendant had been previously instructed that relevancy was not grounds to refuse to answer, and that only a reasonable claim of privilege justifies not answering a question at a deposition.  (*See id*.; Mot. to Compel Order 7.)  Defendant was again admonished that "refusal to answer on the basis of the Fifth Amendment in civil cases, if obstructive or prejudicial to the opposing party, may also lead

---

[39]    Some of the topics as to which Defendant was questioned and refused to answer were:  (1) where he resides; (2) his involvement with www.famguardian.org or www.sedm.org, websites for two entities, Family Guardian and its affiliate Sovereignty Education & Defense Ministry, which promote and distribute tax-evasion materials; (3) authorship of the materials available on the websites; (4) the purpose and activity on these websites, including whether the materials are offered for sale and whether any services are offered; (5) his involvement with Family Guardian and Sovereignty Education & Defense Ministry; (6) ownership of these organizations and their membership; and (7) whether the IRS had contacted him about the Sovereignty Education & Defense Ministry website.  (*See* Hansen Dep.)

[40]    After extensive and unproductive questioning, Plaintiff noted that Defendant was "generally selective when choosing to honor that contract and when to answer questions.  What's . . . your criteria?  What's subject to the contract and what isn't?"  (Hansen  Dep. at 114.)  Defendant's response:  "Anything that's unfavorable."  (*Id*.; *see also id.* at 50, 125, 172, 224-25.)

to adverse consequences for Defendant." (Sanctions Order at 2.)  The Magistrate Judge found that Defendant failed to comply with the Motion to Compel Order, and that his refusal to answer questions was obstructive and prejudicial to Plaintiff.  Based thereon she awarded monetary sanctions and ordered that Defendant's deposition reconvene no later than February 17, 2006.[41] (*Id*. at 3-4.)  Defendant was admonished that "**[f]urther refusal to answer questions will result in Defendant being prohibited from introducing evidence on the subjects that he refuses to answer and may result in a default judgment being entered against him**."  (*Id*. at 4.)

Plaintiff noticed Defendant's deposition for February 7, 2006, but Defendant failed to appear.  Defendant did not attend any further deposition "because he had explicitly told the Plaintiff he would instead answer all his questions under Fed. Rul. Civ. Proc. 31 as a Deposition Upon Written Questions."  (Mem. of Law in Supp. of Pet. to Amend J. and for More Definite Statement, filed 6/13/06, at 22.)  He justified this as necessary to ensure "that his answers were complete, thorough and did not suborn perjury by excluding evidence the Plaintiff refused to allow him to provide during an oral deposition."  (*Id*.)

On February 10, 2006, Plaintiff filed a motion for summary judgment.  In opposition, Defendant filed a 57-page Affidavit of Material Facts in Support of Opposition to Motion for Summary Judgment (attached to Mem. of Law in Supp. of Opp'n to Mot. for Summ. J., filed 3/6/06.)  In its reply, Plaintiff argued the affidavit should be disregarded because at his deposition Defendant refused to answer questions regarding the same issues, and the Sanctions Order had admonished him that his refusal to answer questions would result in evidence preclusion as to those facts.  (Reply at 2; *see also* Sanctions Order at 4.)  The court agrees.

The court may strike and disregard tactical corrections or "rewrites" of a deposition transcript "tailored to manufacture an issue of material fact . . . to avoid a summary judgment ruling."  *Hambleton Bros. Lumber Co. v. Balkin Enter., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005).  This is because "[a] deposition is not a take home examination."  *Id*. (quoting *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n. 5 (10th Cir. 2002)).  Since "this type of 'sham'

---

[41]        Again, Defendant did not object to this order.  *See* Fed. R. Civ. P. 72(a).

correction is akin to a 'sham' affidavit," the court can strike it for purposes of opposing a summary judgment motion. *Id*. at 1225-26; *see also, e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony"); *Block v. City of Los Angeles*, 253 F.3d 410, 419 n.2 (9th Cir. 2001) ("A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts.").

What Defendant did in this case is for all practical purposes the same. After he violated two court orders regarding his participation in deposition and admonishing him he risked preclusion of evidence, he attempted to replace his deposition testimony, which consisted almost entirely of objections, with an affidavit containing substantive answers about material issues. Accordingly, the Court finds Defendant's affidavit is a sham, and the affidavit is stricken for purposes of opposing Plaintiff's summary judgment motion.

### C.    IRC §§ 6700 and 7408

Congress added §§ 6700 and 7408 to the IRC as part of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 324. *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000); *United States v. White*, 769 F.2d 511, 514 (8th Cir. 1985). Section 7408 "authorizes the United States to institute an action in federal district court at the request of the Secretary of Treasury to 'enjoin any person from further engaging in conduct subject to penalty under section 6700.'" *United States v. Buttorff*, 563 F. Supp. 450, 452 (N.D. Tex. 1983) (quoting TEFRA); *White*, 769 F.2d at 514. If the court determines that the defendant has engaged in conduct proscribed by § 6700 "and that injunctive relief is appropriate to prevent its recurrence, then the court may enjoin the defendant from engaging in it or in any other activity subject to penalty under section 6700." *White*, 769 F.2d at 514-15.

Congress intended § 6700 to be a "'penalty provision specifically directed toward promoters of abusive tax shelters *and other abusive tax avoidance schemes*.'" *Id*. (quoting *United States v. Savoie*, 594 F. Supp. 678, 680 (W.D. La. 1984)). To establish a violation of IRC § 6700 warranting an injunction under IRC § 7408, the United States must prove

05cv0921

Defendant:  (1) organized or sold, or participated in the organization or sale of an entity, plan, or arrangement; (2) made or caused to be made false or fraudulent statements concerning the tax benefits to be derived from the entity, plan or arrangement; (3) knew or had reason to know that the statements were false or fraudulent; (4) the false or fraudulent statements pertained to a material matter; and (5) an injunction is necessary to prevent recurrence of this conduct.  *Estate Pres.*, 202 F.3d at 1098; *United States v. Raymond*, 228 F.3d 804, 811 (7th Cir. 2000).

### 1.      Whether Defendant Organized or Sold, or Participated in the Organization or Sale of an Entity, Plan or Arrangement

"Under § 6700 any 'plan or arrangement' having some connection to taxes can serve as a 'tax shelter' and will be an 'abusive' tax shelter if the defendant makes the requisite false or fraudulent statements concerning the tax benefits of participation."  *Raymond*, 228 F.3d at 811. This statute is "'broad enough to include a tax protestor group.'"  *Id.* (quoting *United States v. Kaun*, 827 F.2d 1144, 1148 (7th Cir. 1987)); *United States v. Cohen*, No. C04-0332P, 2005 WL 1491978, at *4 (W.D. Wash. May 13, 2005) (stating that "a defendant need not be operating a traditional investment tax shelter to run afoul of § 6700, but that the organization or participation in a tax protestor scheme or group, which is based on false or fraudulent conceptions of the U.S. Tax Code, will suffice").

The evidence before the Court establishes Defendant has sold a plan or arrangement under the terms of the statute.  Hansen promotes programs advising customers on how to avoid paying federal taxes, including response letters to be used by persons who have been contacted by the IRS.[42]   The prices for these guides range from $10 to $40, and some documents he offers for free.[43]  Defendant also markets a "Citizenship Administrative Repudiation" program in which his customers purportedly give up their "U.S. citizenship," but retain or claim "American National citizenship."[44]  Hansen states that as a result of the Administrative Repudiation, the

---

[42]  Gordon Decl. ¶¶ 6, 13-14; Cantrell Decl. ¶¶ 3, 5, Exs. 2(b), (f)-(l).

[43]  Gordon Decl. ¶ 6.

[44]  Cantrell Decl. ¶¶ 2, 5, Ex. 2(a) at 28-47, Ex. 2(c) at 406; Ex. 2(m) at 583; Gordon Decl. ¶ 29, Ex. 1(b) at 8, 10-11.

customer will no longer be liable for federal income tax.[45]  He charges $2,000 to individuals and

$2,700 for a couple for the Administrative Repudiation process.[46]  These programs are marketed

through word-of mouth, live seminars, and his websites www.famguardian.org and

www.sedm.org.[47]

### 2.   Whether Defendant Made False or Fraudulent Statements Concerning the Tax Benefits to be Derived from the Entity, Plan or Arrangement

The evidence before the Court establishes that Defendant's programs make false and

fraudulent statements to customers by advising them they are not obligated to pay federal

income taxes.  In particular, Defendant tells customers the IRC applies only within a "federal

zone;"[48] federal income taxes only apply to federal officers, federal employees, and elected

federal officials;[49] payment of income taxes is voluntary;[50] income does not include wages,

salaries, commissions, or tips;[51] wages cannot be taxed;[52] and W-4 forms do not apply to federal

income taxes and only federal employees or federal officeholders need to complete Form W-4.[53]

None of these arguments have ever been recognized as legitimately insulating individuals

from federal taxation, but instead have been repeatedly rejected by the courts.  Courts have, on

numerous occasions, concluded that the IRC imposes a tax on all income, wages are income,

paying taxes is not voluntary, and paying taxes is not limited to federal enclaves or federal

employees.  *Becraft*, 885 F.2d at 548 n.2; *Wilcox v. Comm'r of Internal Revenue*, 848 F.2d 1007,

---

[45]  Gordon Decl. ¶ 29, Ex. 1(b) at 10.

[46]  Gordon Decl. ¶ 29, Ex. 1(b) at 11.

[47]  Gordon Decl. ¶¶ 7, 12.

[48]  Cantrell Decl.¶¶ 3, 5, Ex. 2(b) at 286, Ex. 2(e) at 466.

[49]  *Id*. ¶ 5, Ex. 2(e) at 466, Ex. 2(g) at 520-23, Ex. 2(h) at 527-30.

[50]  *Id*. ¶ 5, Ex. 2(e) at 494.

[51]  *Id*. ¶5, Ex. 2(e) at 504.

[52] *Id*. ¶ 5, Ex. 2(e) at 507.

[53]  *Id*. ¶ 5, Ex. 2(i) at 534-38.

1008 (9th 1988); *Sloan*, 939 F.2d at 500-01.  The Sixteenth Amendment to the United States

Constitution authorizes the United States Congress to impose a federal income tax on citizens

and residents of the United States.  *Wilcox*, 848 F.2d at 1008 n.3.  "Like it or not, the Internal

Revenue Code is the law."  *Ryan v. Bilby*, 764 F.2d 1325, 1328 (9th Cir. 1985).

Defendant's "Citizenship Administrative Repudiation Program" falsely claims it is

possible to renounce one's citizenship to the United States for purposes of avoiding federal

income tax liability.  Numerous courts have refused to accept the argument that individuals can

reject United States citizenship in order to relieve themselves of their federal income tax

liabilities.  *See, e.g.*, *Sloan*, 939 F.2d at 500-01; *United States v. Gerads*, 999 F.2d 1255, 1256

(8th Cir. 1993); *United States v. Price*, 798 F.2d 111, 113 (5th Cir. 1986).  "'All individuals,

natural or unnatural, must pay federal income tax on their wages,' regardless of whether they

requested, obtained or exercised any privilege from the federal government."  *Sloan*, 939 F.2d at

500 (quoting *Lovell v. United States*, 755 F.2d 517, 519 (7th Cir. 1984)).

### 3.   Whether Defendant Knew or Had Reason to Know that the Statements Were False or Fraudulent

"The United States is not required to establish that defendants acted with subjective bad

faith."  *United States v. Ratfield*, No. 01-8816-CIV-MARRA, 2004 WL 3174420, at *18 (S.D.

Fla. Nov. 30, 2004).  Congress expressly provided a promoter or seller is subject to penalties if

he "knows or has reason to know" that his statements are false or fraudulent.  *Id*.  TEFRA's

legislative history indicates the "knows or has reason to know" standard "includes what a

reasonable person in the [defendant's] . . . subjective position would have discovered."  *Estate

Pres.*, 202 F.3d at 1103 (internal quotations omitted) (alteration in original).  This standard

"allow[s] imputation of knowledge so long as it is commensurate with the level of

comprehension required by the speaker's role in the transaction."  *Id*. (internal quotations

omitted) (alteration in original).

The evidence before the Court conclusively establishes that Defendant knows or should

know that the theories under which he urges others to avoid paying federal income taxes are

false or fraudulent.  Defendant's websites state Defendant has researched the tax code.  This

1   research would have revealed the well-established law discussed above requiring payment of

2   federal income taxes by all citizens and residents of the United States.  Further, in his publication

3   "The Great IRS Hoax," Defendant admits that courts have rejected his views on the federal tax

4   laws.[54]  Accordingly, the Court finds the knowledge element is satisfied.

### 4.      Whether Defendant's False or Fraudulent Statements Pertained to a Material Matter

7           Statements regarding the availability of credits, deductions, or other means for reducing

8   tax liability are material.  *United States v. Estate Pres. Servs.*, 38 F. Supp. 2d 846, 855 (E.D. Cal.

9   1998), *aff'd* 202 F.3d 1093 (9th Cir. 2002).  The Court finds Defendant's statements are material

10  because they "would have a substantial impact on the decision-making process" of an individual

11  regarding his or her tax liability.  *See United States v. Campbell*, 897 F.2d 1317, 1320 (5th Cir.

12  1990).  Further, although it is not necessary for the government to prove taxpayer reliance, there

13  is evidence before the Court that numerous individuals have filed frivolous tax returns and anti-

14  tax correspondence using Defendant's materials.[55]  For these reasons, the materiality prong is

15  met.

### 5.      Whether an Injunction is Necessary to Prevent Recurrence of this Conduct

18          Because IRC § 7408 sets forth the criteria for injunctive relief, the United States need

19  only meet those criteria, without reference to the traditional equitable factors, for an injunction to

20  issue under this section.  *Estate Pres.*, 202 F.3d at 1098.  In determining the need for an

21  injunction, courts consider the following factors:

> (1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation; (3) the defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the defendant's recognition (or non-recognition) of his own culpability; and (6) the likelihood that defendant's occupation would place him in a position where future violations could be anticipated.

25  *Id.* at 1105; *accord United States v. Schiff*, 379 F.3d 621, 625 (9th Cir. 2004).

---

[54]  Cantrell Decl. ¶ 4, Ex. 2(d) at 427, 429.

[55]  Gordon Decl. ¶ 21.

1    Having reviewed the record, the Court finds consideration of these factors mandates an

2    injunction be issued.  Defendant's programs are advertised throughout the country, and have

3    resulted in numerous persons illegally failing to file appropriate federal income tax returns,

4    failing to have the proper amount of federal income taxes withheld from their wages, and failing

5    to pay their federal tax liabilities.[56]  Although advised his programs are under investigation,

6    Defendant has continued to market his programs.[57]  Further, his materials indicate he is

7    effectively "at war" with the IRS and encourages others to use his materials to do the same.[58]

8    There is no indication that absent court order that Defendant will cease his activities.

9    Accordingly, the Court finds an injunction is warranted.

10        **D.    IRC §§ 6701 and 7408**

11    To obtain an injunction under IRC § 7408 based on a violation of IRC § 6701, the United

12    States must prove:  (1) the defendant prepares, assists in, procures, or advises the preparation of

13    any portion of a return, affidavit, claim, or other document; (2) the defendant knows (or has

14    reason to believe) that such portion will be used in connection with any material matter arising

15    under the internal revenue laws; (3) the defendant knows that such portion (if so used) would

16    result in an understatement of the liability for tax of another person; and (4) an injunction is

17    necessary prevent a recurrence of this conduct.  26 U.S.C. §§ 6701, 7408.

18        The evidence before the Court establishes the elements of an IRC § 6701 violation.  In

19    particular, the evidence establishes Hansen aids and assists his customers in preparing false or

20    fraudulent income tax returns.  His websites provide sample returns and instructions, as well as

21    letters for clients to use when they get audited.  For the reasons discussed above, the Court finds

22    the evidence shows Defendant knows or has reason to know that his advice and documents will

23    be used in a material matter — the filing of false or fraudulent income tax returns — and will

24    result in his customers' understatement of tax liability.  The Court further finds, for the reasons

25

26        [56] *Id.* ¶ 26.

27        [57] *Id.* ¶ 27.

28        [58] *Id.* ¶ 28, Ex. 1(a) at 7.

1    discussed above, that an injunction is warranted to prevent recurrence of this conduct.

2    **E.    IRC § 7402**

3    IRC § 7402 authorizes district courts to issue injunctions as may be necessary or

4    appropriate for the enforcement of internal revenue laws.  26 U.S.C. § 7402(a); *United States v.*

5    *Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir. 1984).  Congress has expressly stated that

6    injunctive relief under IRC § 7402(a) is "in addition to and not exclusive of any and all other

7    remedies." *See* IRC § 7402(a).  In *Ernst* the Eleventh Circuit held, however, that for an

8    injunction to issue under IRC § 7402(a) the United States must meet the traditional equitable

9    standard for an injunction.  *Ernst*, 735 F.2d at 1301 ("the decision to issue an injunction under §

10   7402(a) is governed by the traditional factors shaping the use of the equitable remedy.").  Those

11   factors are:  (1) the likelihood of continuing irreparable injury to the United States, (2) the harm

12   to the defendant, (3) success on the merits of the case, and (4) the public interest.  *United States*

13   *v. Harkins*, 355 F. Supp. 2d 1175, 1181 (D. Or. 2004).

14   Considering these four factors, the Court finds an injunction under IRC § 7402 is

15   appropriate.  Plaintiff is sustaining irreparable harm in the form of lost revenue from Hansen's

16   customers who either fail to file income tax returns or file income tax returns that illegally seek a

17   refund or misrepresent the customer's tax liability.  Further, Defendant will not sustain any

18   irreparable harm by being required to obey the law.  Third, Plaintiff has prevailed in its claims,

19   and finally, the public interest in prohibiting the Defendant from selling illegal and invalid tax

20   avoidance programs is great.

21   As part of its injunctive relief under IRC § 7402, the Government requests the Defendant

22   be required to:  (1) furnish the Government with the identities of those persons who have

23   purchased his abusive tax programs, and to notify those customers of this Court's ruling in this

24   matter; (2) remove false and fraudulent tax promotional materials from his websites; and (3) post

25   a copy of the Court's injunction order on those websites.  The Court will address each of these

26   provisions in turn.

27   **1.    Identities and Notification of Customers**

28   Plaintiff requests the Defendant be ordered to produce the identities of his customers and

1   notify those customers of the Court's ruling in this case.  The record establishes the Government

2   has had to devote significant resources to identifying and preventing revenue lost due to

3   individuals using Defendant's programs to avoid paying income tax.  In particular, the IRS has

4   received "a voluminous amount of frivolous tax returns and anti-tax correspondence from

5   individuals across the United States who are utilizing Hansen's materials."[59]  The IRS has

6   completed audits for 72 of Defendant's customers, resulting in additional tax assessments of

7   $1,049,654, exclusive of interest and penalties.[60]

8          Based on this evidence, the Court concludes that "knowing the identities of Defendant['s]

9   customers will assist the IRS in identifying frivolous returns and determining whether any

10  erroneous refunds have been issued."  *United States v. Hill*, No. CV-05-877-PHX-DGC, 2005

11  WL 3536118, at *7 (D. Ariz. 2005).  Accordingly, the Court will order Defendant to disclose to

12  Plaintiff the identities of any individuals who have purchased Defendant's abusive tax programs,

13  and to notify those customers of this Court's ruling in this case.

14              **2.     Removing the False Advertising from the Website**

15         "Fraudulent commercial speech may be enjoined" without running afoul of the First

16  Amendment.  *Schiff*, 379 F.3d at 630; *Estate Pres.*, 202 F.3d at 1106.  "An advertisement is

17  fraudulent when it misleads customers about the benefit of the offered product."  *Schiff*, 379 F.3d

18  at 630.  Defendant contends his speech is "exclusively religious" and comprised of "political

19  statements that are factual, not actionable."[61]  The Court disagrees.  As discussed above,

20  Defendant's websites promote the view that payment of federal income taxes is voluntary, that

21  wages are not income, the IRC applies only to federal enclaves, and that only federal officers,

22  employees, and elected federal officials are subject to federal taxation.  "Although these claims

23  are far-fetched, they could mislead a customer into believing that he or she could use

24  [Defendant's] products to legally stop paying income taxes."  *Id*.  Defendant's promotional

---

26  [59]  Gordon Decl. ¶ 21; Henline Decl. ¶¶ 5-7.

27  [60]  Henline Decl. ¶ 10.

28  [61]  Opp'n Br. At 9.

1   activities are properly considered commercial speech, and can be regulated as such.  *See Schiff*,

2   379 F.3d at 626-30.  The Court will therefore order Defendant to remove from his websites all

3   advertising for his fraudulent tax programs.  *See id.*; *Hill*, 2005 WL 3536118, at *6.

4   **3.   Posting a Copy of the Court's Ruling**

5   "In a commercial setting, such as a website that sells products, the government must be

6   able to regulate content to prevent the deception of customers."  *Schiff*, 379 F.3d at 631.  Further,

7   "mandated disclosure of factual, commercial information does not offend the First Amendment."

8   *Id*.  The Ninth Circuit recently affirmed a district court's order requiring defendants to post an

9   order preliminarily enjoining the defendants from promoting their "zero-income" tax theories on

10  the defendants' website.  *Id*.  The Court finds that because Defendant has been offering

11  fraudulent tax services on his websites that could expose customers to penalties, requiring

12  Defendant to post a copy of this Court's permanent injunction order on his websites is

13  warranted.  *See id.*; *Hill*, 2005 WL 3536118, at *7.

14  <u>**ORDER OF PERMANENT INJUNCTION**</u>

15  As discussed above, based on the Court's factual and legal findings, the following

16  permanent injunction is entered against the Defendant under IRC §§ 6700, 6701, 7408, and

17  7402(a).

18  **IT IS HEREBY ORDERED** that Defendant, individually, and doing business as or

19  through any other entity, and other persons in active concert or participation with him, are

20  permanently enjoined from directly or indirectly:

21  (1) Organizing, promoting, advertising, marketing, or selling (or assisting therein) any tax

22  shelter, plan or arrangement that advises or encourages customers to attempt to violate the

23  internal revenue laws or unlawfully evade the assessment or collection of their federal tax

24  liabilities;

25  (2) Making false or fraudulent statements about the securing of any tax benefit by the

26  reason of participating in any plan or arrangement, including the false statements that only

27  federal workers are subject to the Internal Revenue Code, workers need not submit accurate W-4

28  forms, and that United States citizens are not liable for federal income taxes.

(3) Encouraging, instructing, advising, and assisting others to violate the tax laws, including the evasion of assessment and payment of taxes;

(4) Engaging in conduct subject to penalty under 26 U.S.C. § 6700, *i.e.*, making or furnishing, in connection with the organization or sale of a shelter, plan, or arrangement, a statement the Defendant knows or has reason to know to be false or fraudulent as to any material matter under the federal tax laws;

(5) Engaging in conduct subject to penalty under 26 U.S.C. § 6701, *i.e.*, preparing or assisting others in the preparation of any tax forms or other documents to be used in connection with any material matter arising under the internal revenue laws and which the Defendant knows (or has reason to believe) will (if so used) result in the understatement of tax liability; and

(6) Engaging in any conduct that interferes with the administration and enforcement of the internal revenue laws, including encouraging and assisting customers in disrupting or delaying IRS examination of their tax liabilities.

### **CONCLUSION**

Having reviewed the record and applicable law, **IT IS HEREBY ORDERED**:

1. Defendant's *ex parte* application to extend ruling is **DENIED AS MOOT**.

2. Defendant's motion for leave to file a cross complaint is **DENIED** [dock. no. 77].

3. Defendant's motion to stay is **DENIED AS MOOT** [dock. no. 85].

4. Defendant's motion to dismiss is **DENIED** [dock. no. 81].

5. Plaintiff's motion for summary judgment is **GRANTED**, and a permanent injunction is entered against the Defendant under IRC §§ 6700, 6701, 7408, and 7402 as stated above [dock. no. 67]. **IT IS FURTHER ORDERED** under 26 U.S.C. § 7402 that:

a. Within 21 days of the date this Order is stamped "Filed," Defendant shall produce to the United States all records in his possession, custody, or control or to which he has access that identify the names, addresses, e-mail addresses, phone numbers, and social security numbers (or employer identification numbers) of persons or entities who purchased any of Defendant's products.

b. Within 21 days of the date this Order is stamped "Filed," Defendant must place

this Order, in its entirety, on his websites www.famguardian.org and www.sedm.org.

       c.  Within 21 days of the date this Order is stamped "Filed," Defendant shall provide a copy of this Order to his current and former customers for which he has contact information.

6.  In light of the Court's order finding summary judgment appropriate, Plaintiff's motion for default judgment is **DENIED WITHOUT PREJUDICE AS MOOT** [dock. no. 64].

7.  This Order **SUPERSEDES** the Order filed June 1, 2006 [dock. no. 91].

The Clerk of the Court is directed to enter an <u>amended judgment</u> in accordance with this Order.


    **IT IS SO ORDERED**.

DATED:  December 13, 2006

                                    M. James Lorenz
                                    United States District Court Judge

COPY TO:

HON. CATHY ANN BENCIVENGO
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

05cv0921